**This order is SIGNED.**

**Dated: September 6, 2018**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*slo*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>THEODORE WILLIAM WHITE, JR. and PORSCHA SHIROMA,<br><br>        Debtors.<br>_____<br><br>J. KEVIN BIRD, Chapter 7 Trustee,<br><br>        Plaintiff,<br>vs.<br><br>RYAN B. WHITE, as personal representative of the estate of Theodore W. White, Sr., and MYRNA Y. WHITE,<br><br>        Defendants. | Bankruptcy Number: 14-25727<br><br>Chapter 7<br><br><br><br>Adversary Proceeding No. 16-02090<br><br><br>Hon. Kevin R. Anderson |
| MEMORANDUM DECISION GRANTING RYAN B. AND MYRNA WHITE'S MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 57) | |

**I.    Introduction**

Over twenty years ago, Theodore William White, Jr. (the "Debtor") was accused, arrested, and incarcerated for a crime he did not commit. Approximately seven years after his initial arrest, and after multiple proceedings, trials, and appeals, the Debtor was exonerated on all charges and released from prison. Shortly thereafter, the Debtor commenced legal proceedings against those who had wrongfully accused him. On August 28, 2008, the Debtor obtained a $15 million judgment against his accusers. On September 29, 2008, the Debtor and his wife executed a

1

promissory note directing that upon collection of the judgment, $1 million of its proceeds would be paid to six family members, including his parents who are the Defendants in this proceeding. The stated consideration for the $1 million note was the emotional and financial support provided to the Debtor by his family during his incarceration and legal proceedings. In July of 2011, after three more years of legal proceedings, the Debtor received a payment of $15.5 million in satisfaction of the judgment. At the same time, and pursuant to the note, the Debtor directed that $1 million of the judgment proceeds be transferred to the Defendants.

Almost three years later on May 30, 2014, the Debtor and his spouse, Porscha Shiroma, filed a voluntary Chapter 7 bankruptcy petition. J. Kevin Bird was appointed as the Chapter 7 Trustee ("Trustee"). Two years later, on May 30, 2016, the Trustee filed this adversary proceeding against Ryan B. White, in his representative capacity as personal representative of the estate of Theodore W. White, Sr., deceased, and Myrna Y. White (the "Defendants").[1] The Complaint seeks to avoid and recover the Debtor's transfers of $1 million and $1,500 to the Defendants under 11 U.S.C. §§ 544, 547, 550, and Utah's Uniform Fraudulent Transfer Act (the "UFTA").[2]

The matter before the Court is the Defendants' Motion for Summary Judgment ("MFSJ"), which argues that the $1 million transfer is not avoidable because the Debtors received reasonably equivalent value.[3] The Court held a hearing on Defendants' MFSJ on August 1, 2018. The Court has reviewed the parties' papers and has conducted independent research of applicable law. For the reasons set forth in this memorandum decision, the Court grants the Defendants' MFSJ.

---

[1] Dkt. No. 1. Hereinafter, all references to the docket will be in Case No. 16-02090 unless otherwise specified.

[2] UTAH CODE ANN. §§ 25-6-5(1)(b) and 25-6-6(1)(a) (2016) (In 2017, the Utah Legislature renamed and amended the *Uniform Fraudulent Transfer Act* to the *Uniform Voidable Transfer Act*).

[3] Dkt. No. 57.

2

## II. Jurisdiction and Venue

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(a) & (b) and 157(b). Defendants' MFSJ is a core proceeding under 28 U.S.C. § 157(b)(2)(H). Venue is appropriate in this District under 28 U.S.C. §§ 1408 and 1409, and notice of the hearing was proper.

## III. Undisputed Facts

Defendants' MFSJ centers on whether the Debtors received "reasonably equivalent value in exchange" for the transfer of $1 million to Defendants. The following undisputed facts[4] are material to the Court's decision and are derived from Defendants' MFSJ,[5] the Trustee's Memorandum and Supporting Document in Opposition,[6] and Defendants' Response:[7]

1. On August 28, 2008, Debtor Theodore White obtained a judgment for $15 million arising from his wrongful arrest, prosecution, and incarceration (the "Judgment").

2. On September 29, 2008, Debtors executed a promissory note in Lawrence County, Missouri ("Note").

3. The Note names six payees consisting of the Defendants Theodore W. White, Sr., and Myrna White (the Debtor's parents); Ryan and Tiffany White (the Debtor's brother and sister-in-law); and Tiffany and Michael Means (the Debtor's sister and brother-in-law) (collectively the "Payees").[8]

---

[4] This statement includes facts that the parties may have objected to, but that the Court determines are not in material dispute.

[5] Dkt. No. 57.

[6] Dkt. No. 65; Dkt. No. 66.

[7] Dkt. No. 67; Dkt. No. 68

[8] See Note, Dkt. No. 57, Ex. 1.

3

4. The Debtors promised under the Note to pay the six Payees a total of $1 million "share and share alike," but "contingent upon full payment of . . . [the Judgment] from any source."[9]

5. The stated consideration for the Note was "the love, support and advancement of the necessary defense funds to Theodore W. White, Jr. [the Debtor] during the time that he was charged, prosecuted and unfairly imprisoned from 1998 to 2005."[10]

6. None of the Payees assigned their interests in the Note to the Defendants.

7. On July 21, 2011, the Debtor received $15.5 million in settlement of the Judgment.

8. On July 22, 2011, the Debtor caused $1 million of the Judgment proceeds to be transferred to the Defendants (the "$1 Million Transfer").

9. All Payees agree that the Debtor's $1 Million Transfer to the Defendants was in full satisfaction of the Note.

10. On May 30, 2014, the Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

11. On May 30, 2016, the Trustee filed a complaint against the Defendants to recover the $1 Million Transfer as a constructively fraudulent transfer under the UFTA.

## IV. Summary Judgment Standard

Under Fed. R. Civ. P. 56(a), as incorporated into bankruptcy proceedings by Fed. R. Bankr. P. 7056, the Court is required to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Substantive law determines which facts are material and which are not. "Only disputes over facts

---

[9] *Id.*
[10] *Id.*

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[11] Whether a dispute is "genuine" turns on whether "the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party."[12] In sum, the Court's function at the summary judgment stage is to "determine whether there is a genuine issue for trial."[13]

The moving party bears the burden to show that it is entitled to summary judgment,[14] including the burden to properly support its summary judgment motion as required by Rule 56(c).[15] If the moving party has failed to meet its burden, "summary judgment must be denied," and the nonmoving party need not respond because "no defense to an insufficient showing is required."[16] Once the moving party meets its initial burden, "the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."[17] The nonmoving party may not rely solely on allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."[18]

When considering a motion for summary judgment, the Court views the record in the light most favorable to the non-moving party,[19] but the Court does not weigh the evidence or make credibility determinations.[20]

---

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[12] *Id.*

[13] *Id.* at 249.

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[15] *Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002).

[16] *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (citation omitted)

[17] *Concrete Works of Colorado, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).

[18] *Celotex*, 477 U.S. at 324.

[19] *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1279 (10th Cir. 2013) (citation omitted).

[20] *Nat'l Am. Ins. Co. v. Am. Re–Insurance Co.*, 358 F.3d 736, 742–43 (10th Cir. 2004) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir. 1994)).

## V.   Summary of the Issues

The Trustee's complaint seeks to recover the $1 Million Transfer from Defendants based on the allegation that the Debtors did not receive reasonably equivalent value in exchange for such transfer. Defendants counter that the $1 Million Transfer is not avoidable because it fully satisfied the legally-enforceable Note for $1 million.

The Trustee now alleges that the Note was not enforceable for want of consideration. The Trustee also alleges that the Defendants were overpaid because the Note's "share-and-share alike" provision gave each Payee a one-sixth interest in the $1 Million Transfer.

Therefore, the core issues are whether the Note constituted a legally-enforceable, antecedent debt of the Debtors, and whether the $1 Million Transfer was in full satisfaction of the Note.

## VI.   Analysis

The Trustee's Complaint alleges that the Debtors "did not receive equivalent value in exchange for the" $1 Million Transfer.[21] The UFTA provides that "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied."[22] A transfer that results in a dollar-for-dollar reduction of a valid, antecedent debt is not constructively fraudulent because it has no impact on a debtor's net worth and thus results in no prejudice to other creditors.[23]

---

[21] Dkt. No. 1 at ¶ 18.

[22] UTAH CODE ANN. § 25–6–4(1) (2016).

[23] *Klein v. Michelle Tuprin & Assocs., P.C.*, No. 2:14-cv-00302-RJS-PMW, 2016 WL 3661226, at *7, 2016 U.S. Dist. LEXIS 86954 (D. Utah July 5, 2016) (if a transfer satisfies a legally-enforceable debt of the payor, then the payor has received reasonably equivalent value for purposes of the UFTA); *Klein v. Cornelius*, 786 F.3d 1310, 1321 (10th Cir. 2015) ("The primary consideration in analyzing the exchange of value for any transfer is the degree to which the transferor's net worth is preserved.") (citation omitted); *Rupp v. Moffo*, 358 P.3d 1060, 1064 (Utah 2015) ("In cases where the debtor does receive reasonably equivalent value, the transfer puts one asset beyond the reach of the creditors, but replaces the asset with one of equivalent value, thus avoiding any harm to creditors.").

6

A. <u>Was the Note a Valid and Legally-Enforceable Obligation of the Debtors?</u>

A dispositive issue in this case is whether the Note was valid and enforceable at the time of the $1 Million Transfer. While not alleged in his Complaint, the Trustee has now asserted that the "Note was not enforceable for lack of consideration."[24] In essence, the Trustee is arguing that the Note can be avoided because the Debtors did not receive reasonably equivalent value at the time they signed the Note. However, this separate cause of action is not in the Complaint, and the statute of limitations for challenging the Note under § 544 and the UFTA has long passed – even for the Trustee.

Specifically, the Trustee is proceeding under § 544, which means he steps "into the shoes of an actual creditor who has standing to avoid the transfer under the applicable state law."[25] This includes any defenses that could be asserted against such creditor.[26] In this case, the Note was signed on September 9, 2008. The statute of limitations for the recovery of a constructively fraudulent transfer under UTAH CODE ANN. § 25-6-5(1)(b) or 25-6-6(1) is four years.[27] So the time to avoid the Note ran on Monday, September 10, 2012. The Debtors filed their bankruptcy petition on May 30, 2014, and the Trustee filed this Complaint on May 30, 2016. Consequently, the Trustee is time-barred from seeking to avoid the Note under the UFTA.[28]

---

[24] Dkt. No. 65, p. 13.

[25] *Montoya v. Tobey (In re Ewbank)*, 359 B.R. 807, 809-10 (Bankr. D. N.M. 2007) (citation omitted).

[26] *Id.*

[27] UTAH CODE ANN. § 25-6-10. <u>Claim for relief – Time limits</u>. A claim for relief or cause of action regarding a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
. . .
(2) under Subsection 25-6-5(1)(b) or 25-6-6(1), within four years after the transfer was made or the obligation was incurred.

[28] See *Montoya v. Tobey (In re Ewbank)*, 359 B.R. 807, 809-10 (Bankr. N.M. 2007) (trustee barred from avoiding deeds as fraudulent transfers under § 544 because the four-year statute of limitations of New Mexico's fraudulent transfer act had expired well before the bankruptcy filing).

7

In the similar case of *Cox v. Nostaw, Inc.*, the trustee sought to recover $900,000 in note payments as constructively fraudulent transfers.[29] The trustee argued that because the note was invalid for lack of consideration, the payments on the note were without value to the debtor.[30] The bankruptcy court rejected the trustee's argument because his complaint did not include a cause of action to avoid the note, and the time for filing such an action had expired.[31]

On a motion for reconsideration, the bankruptcy court augmented its ruling by noting that because the statute of limitations to avoid the note had expired, the trustee's only authority to attack the note for lack of consideration was to step into the debtor's shoes under § 541 (as opposed to stepping into a creditor's shoes under § 544).[32] However, the court noted under § 541 that the trustee takes no greater rights than the debtor held, and thus the trustee was subject to the same defenses and limitations as would apply to the debtor.[33] The court then ruled that because lack of consideration is an affirmative defense, it is waived when the obligor pays the note. Further, a "trustee in bankruptcy is bound by any waiver of a defense made by a debtor before the filing of the petition."[34] Therefore, because the debtor could not attack the note for lack of consideration, neither could the trustee.

On appeal, the district court agreed that under such facts, the avoidance of the note was essential to the trustee's cause of action to recover the $900,000 in payments as constructively fraudulent transfers:

---

[29] *Cox v. Nostaw, Inc. (In re Cent. Ill. Energy Coop.)*, 521 B.R. 868 (Bankr. C.D. Ill. 2014).

[30] *Id.* at 874.

[31] *Id.*

[32] *Id. at* 792.

[33] *Id.*

[34] *Id.* at 795 (citation omitted).

> It is widely recognized by courts that where a debtor makes prepetition payments on a contractual debt, in order for those payments to be avoidable as constructively fraudulent, it is necessary for the trustee to first avoid the underlying contract as a fraudulently incurred obligation. Absent avoidance of the underlying contract, the payments discharge the obligation and are, by definition, for reasonably equivalent value.[35]

In other words, if payments result in a commensurate, dollar-for-dollar satisfaction of a note, the note itself must either be avoided or found to be legally unenforceable before a trustee in bankruptcy can avoid such payments as constructively fraudulent transfers.[36] And as the trustee in *Cent. Ill. Energy Coop.*, the Trustee in this case cannot seek to avoid the Note because the statute of limitations for an action under UFTA expired some years before the bankruptcy filing. Even though not specifically pleaded or alleged, the Trustee's only basis to avoid the Note for lack of consideration would be to "stand in the debtor's shoes" under § 541. However, because the Debtors have already accepted the consideration under the Note and paid it in full, the Debtors have waived any challenge to the Note, and the Trustee is bound by that waiver.[37]

For these reasons, the Court finds that the Note cannot be avoided by the Trustee, and that it was otherwise a valid and legally-enforceable obligation of the Debtors at the time of the $1 Million Transfer.

---

[35] *Id.* at 791 (citing *In re Tanglewood Farms, Inc. of Elizabeth City*, 487 B.R. 705 (Bank. E.D. N.C. 2013); *In re Incentium, LLC*, 473 B.R. 264 (Bankr. E.D. Tenn. 2012); *In re TSIC, Inc.*, 428 B.R. 103 (Bankr. D. Del. 2010); *In re All–Type Printing, Inc.*, 274 B.R. 316 (Bankr. D. Conn. 2002)).

[36] *Klein v. Michelle Tuprin & Assocs., P.C.*, No. 2:14-cv-00302-RJS-PMW, 2016 WL 3661226, at *7, 2016 U.S. Dist. LEXIS 86954 (D. Utah July 5, 2016) (transfer was avoidable as constructively fraudulent based on court's finding that the payor was not legally obligated to pay defendant's invoice for legal services).

[37] *See* 5 COLLIER ON BANKRUPTCY ¶ 541.07 (16th 2018) ("In all cases where the trustee seeks to assert or enforce the debtor's right of action against another, the trustee generally stands in the debtor's shoes regarding defenses to the action.").

B. <u>The Note is Supported by Adequate Consideration Under Missouri Law.</u>

Even if the Trustee was not barred from challenging the Note's adequacy of consideration, the Debtors received legally-sufficient consideration for the Note to be valid under Missouri law. The Note asserts three forms of consideration: "love, support, and advancement of the necessary defense funds to Theodore W. White Jr. [the Debtor] during the time that he was charged, prosecuted, and unfairly imprisoned from 1998 to 2005."[38] The last phrase alone is dispositive as to the issue of adequate consideration.

Under Missouri law, consideration on a note "may consist of some benefit to one party or some detriment to the other."[39] The "discharge, release or forbearance of a right or claim against a third person, at the instance or request of the obligor, is sufficient consideration to support the latter's undertaking on a note."[40] A promissory note specifically imports consideration.[41] In *Hammons v. Ehney*, the Missouri Supreme Court stated:

> A recitation of the consideration on which an agreement is based is prima facie evidence that sufficient consideration existed. Furthermore, all written promises to pay another a specific sum of money, signed by the promisor, import a consideration. Under both theories, a presumption is created that consideration exists, which must be overcome by evidence to the contrary.[42]

---

[38] Note, Dkt. No. 57, Ex. 1 at ¶ 4.

[39] *Brown v. Mustion*, 884 S.W.2d 365, 369 (Mo. Ct. App. 1994) (citation omitted).

[40] *Id.*

[41] *Sverdrup Corp. v. Politis*, 888 S.W.2d 753, 754 (Mo. Ct. App. 1994) ("In a suit on a note the holder makes a *prima facie* case by producing the note admittedly signed by the maker and showing the balance due. A promissory note imports consideration.") (citations omitted).

[42] *Hammons v. Ehney*, 924 S.W.2d 843, 850 (Mo. 1996) (citations omitted). See also MO. ANN. STAT. § 431.020 ("All instruments of writing made and signed by any person or his agent, whereby he shall promise to pay to any other, or his order, or unto bearer, any sum of money or property therein mentioned, shall import a consideration.").

This import of consideration occurs regardless of whether the Note was negotiable or non-negotiable.[43] Finally, if multiple considerations are stated for a promise, only one form of consideration need be legally sufficient to render the promise enforceable.[44]

The Trustee argues that "[l]ove, affection, and moral support will not suffice as consideration for a contractual promise,"[45] citing to the Missouri case of *Rose v. Howard*.[46] This is indeed the law, but the Trustee cannot overcome the other stated consideration in the Note regarding "the advancement of the necessary defense funds" to the Debtor. A note to repay funds previously advanced for the benefit of the note's obligor is unquestionably sufficient consideration under Missouri law.

Further, the Note contains an implicit forbearance agreement by stating that "payment pursuant to the terms of this note is contingent upon full payment of . . . the judgment of $14,000,000."[47] And this is exactly what happened. Almost three years later, on July 21, 2011, the Debtor received $15.5 million under the Judgment, and the next day he transferred $1 million to the Defendants.[48] Thus, the Payees' agreement to await collection on the Judgment before receiving payment on the Note constituted additional consideration.

---

[43] See *Lowrey v. Danforth*, 69 S.W. 39, 39 (Mo. Ct. App. 1902) ("A promissory note, whether negotiable or not, imports a consideration.").

[44] *See Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) ("If two considerations are given for a promise, one of them being legally sufficient to support a promise and the other not sufficient, the promise is enforceable.") (quoting *Earl v. St. Louis Univ.*, 875 S.W.2d 234, 236–237 (Mo. Ct. App. 1994)).

[45] *See* Dkt. No. 65, p. 5.

[46] *Rose v. Howard*, 670 S.W.2d 142, 146 (Mo. Ct. App. 1984).

[47] The Judgment was for $14 million in general damages and $1 million in punitive damages. The Note's repayment was thus contingent upon payment of only the general damage award.

[48] Dkt. No. 68.

The Trustee makes other arguments under pre-UCC Missouri law because the Note is non-negotiable.[49] However, the Trustee has not demonstrated why pre-UCC Missouri law should apply. In contrast, the Missouri Legislature has specifically indicated that applying the UCC by way of analogy to non-negotiable instruments may be appropriate.[50] MO. ANN. STAT. § 400.3-303(a)(3), provides that, "[a]n instrument is issued or transferred for value if: . . . (3) the instrument is issued or transferred as payment of, or as security for, an antecedent claim against any person, whether or not the claim is due." Under this clear and straightforward test, there was consideration on the part of the Defendants and other payees for the Note based on the antecedent debt, without any need for a showing of extinguishment.[51]

The Trustee makes other arguments on this point, but he has stretched his lack-of-consideration fight far beyond its reasonable application.[52] None of these arguments were alleged in the Complaint, and the Court has already found that the Trustee is barred from seeking to avoid the Note for lack of consideration. The Court has nonetheless addressed this issue and has found that the Note was based on good and valuable consideration under Missouri law. The Court therefore finds that at the time of the $1 Million Transfer, the Note was a valid and legally-enforceable obligation of the Debtors in favor of the Payees.

C. Did the Debtors Receive Equivalent Value in Exchange for the $1 Million Transfer?

The next issue is whether the Debtors received equivalent value in exchange for the $1 Million Transfer. The Trustee argues under Missouri law that with the Note's "share-and-share-

---

[49] Dkt. No. 65, at p. 14.

[50] MO. ANN. STAT. § 400.3-104 cmt. 2.

[51] *See also* MO. ANN. STAT. § 400.3-310(b) (antecedent debt is considered "suspended" so no need to show that it was extinguished).

[52] The Trustee asserts that Defendants must prove that they actually advanced defense funds to the Debtor, and that the Note extinguished the antecedent debt of the advanced defense funds. For the reasons stated, the Court declines to consider these additional arguments.

alike" provision, each of the six Payees was entitled to one-sixth of the $1 Million Transfer.[53] Therefore, because the Defendants received the entirety of the $1 Million Transfer, the other four Payees collectively still hold a claim for $666,666.67 based on their remaining one-sixth interests. Thus, the Debtors only received a value of $333,333.67 in exchange for the $1 Million Transfer.

This argument might be relevant if the other Payees were still making a claim under the Note – but they are not. They have all definitively stated by declaration that they deemed the $1 Million Transfer to the Defendants to be in full satisfaction of Note.[54] The Trustee cannot overcome the effect of these declarations. For these reasons, the Court finds that there is no issue of fact that the $1 Million Transfer was in full satisfaction of the Note. Thus, the Debtors received dollar-for-dollar consideration in exchange for the $1 Million Transfer – and that is all that is required for Defendants to prevail on their MFSJ.

## VII. Conclusion

The Court finds that the Trustee's authority to challenge the Note for lack of consideration under § 544 and the UFTA is time-barred. Moreover, the Court finds that the Trustee would likewise be barred from any challenge to the Note under § 541 due to the Debtors' pre-petition waiver of any defenses when he paid it. Even if the Trustee could contest the Note's adequacy of consideration, the Court has found under Missouri law that it is supported by adequate consideration arising from the Defendants' advance of monies to fund the Debtor's legal defense and prosecution for his wrongful incarceration. The Court finds further consideration from the Payees' three-year forbearance in collecting on the Note until the Debtor recovered on the

---

[53] *See Rotert v. Faulkner*, 660 S.W.2d 463 (Mo. Ct. App. 1983) (even though the obligor paid one payee the full amount of the note, the second payee still held a claim against the obligor for one-half of the note amount).

[54] Dkt. No. 68, Ex. 3 at ¶¶ 18 – 25. *See also* Declarations of Ryan White, Tiffany White, Tiffany Means, and Michael Means (stating that they considered the $1 Million Transfer to be in full and complete satisfaction of any obligation owed to them by the Debtors under the Note).

Judgment. Thus, the Court finds no genuine issue of material fact that at the time of the $1 Million Transfer, the Note was a valid and legally-enforceable obligation of the Debtors.

The Court further finds that all Payees deemed the $1 Million Transfer to be in full satisfaction of the Note, and thus the Debtor's payment of $1 million to the Defendants represented a dollar-for-dollar reduction of the Note. Consequently, the Court finds that the Debtors received reasonably equivalent value in exchange for the $1 Million Transfer. Because reasonably equivalent value is an absolute defense to the Trustee's constructively fraudulent transfer action, the Court grants the Defendants' MFSJ. The Trustee's cause of action to avoid and recover the $1,500 the Debtor transferred to Mrs. White within one year of the bankruptcy filing remains at issue.

The Court will enter an Order consistent with the rulings set forth in this Memorandum Decision.

—ooo0ooo—

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

The foregoing MEMORANDUM DECISION GRANTING RYAN B. AND MYRNA Y. WHITE'S MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 57) shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

- Adam S. Affleck   asa@pyglaw.com, debbie@princeyeates.com;docket@princeyeates.com;andalin@princeyeates.com
- T. Edward Cundick   tec@princeyeates.com, docket@princeyeates.com;pam@princeyeates.com
- Mark C. Rose   mrose@mbt-law.com, markcroselegal@gmail.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

None.